1839.

FREAM
v.
DICKINSON.

---

### FREAM v. DICKINSON and others.

---

Although a complainant obtains a reference, yet the master may grant a summons under it to a defendant for a witness to be examined.

Witness became interested by a death while under examination. The death occurred during his cross, but before further direct examination. The court allowed the deposition to stand so as to embrace the direct and cross-examination, but struck out the further direct.

---

*March* 27, 1839.

*Practice.*
*Witness.*
*Death.*

THERE was a question in this case as to the regularity of taking out a summons by a defendant to proceed with the examination of a witness before the master, while the complainant still had the conducting of the reference; but the principal point was, as to the effect of testimony given by a witness, who was disinterested when his examination was commenced, but who became interested before it was over.

The master reported the circumstances to the court, in order to obtain its directions. The following is part of his report:

"I, the aforenamed master, do report, that, on the seventeenth day of September, one thousand eight hundred and thirty-three, the said order was placed in my hands by the complainant's solicitor, and a summons for hearing taken out by him for the nineteenth day of September then instant. That many attendances and hearings took place before me, after the said reference was committed to me as above, until the third day of December, one thousand eight hundred and thirty-six, for the purpose of taking testimony. That said attendances and hearings were mostly by adjournments—and in some instances by new summons—but the prosecution of the reference continued in the hands of the complainant, and I had not committed to any other party the prosecution of the said reference. That on the twenty-sixth day of September, one thousand eight hundred and thirty-six, the cause standing open and not being adjourned to any particular day, I delivered a summons to the complainant's solicitor, for the parties to appear on the twenty-ninth day of September then instant; that, on the day of appearance, the complainant's solicitor only attended, and he took out a summons to close the proofs and sum up the evidence on the first of October then next, at ten o'clock, A. M., at which time the complainant's solicitor only appeared, and I adjourned the hearing until four o'clock on the afternoon of that day, at which time no person appeared on said reference, and the same continued open until the first day of December following, (1836) when the defendant's solicitor applied for and obtained a summons in said cause to take testimony, returnable on the third day of December then instant, at four o'clock, P. M., at which time the respective solicitors appeared and the defendant's solicitor proposed to examine Isaac O. Barker, Esq. as a witness on the part of the defendants. The complainant's solicitor objected to this course, upon the ground that the prosecution of the reference was with him. The practice of taking a summons by either party against the other, pending a reference, I consider to be usual. It is often convenient and rarely objected to; in this case it was issued without reference on my part to a strict practice,

1839.

FREAM
v.
DICKINSON.

and without intending to decide upon the matter of right as to such summons.

" But the objection being taken to its competency, I stated my opinion to that effect. But inasmuch as the testimony was deemed important by the defendant's counsel, I allowed the examination of the witness to be taken, *de bene esse,* and thereupon the complainant's solicitor stated his inability to attend at that hour, on account of other engagements, in consequence of which I adjourned the hearing to seven o'clock in the evening, as the complainant's solicitor could not attend before. He objected altogether to the examination of the witness and the defendant's counsel objected to the postponement, and the whole examination was subject to the complainant's objection, and his counsel cross-examined the witness, reserving his objection. And I further report that the examination of the said witness was commenced at about a quarter past seven o'clock, and the direct examination terminated before eight o'clock. The cross-examination was then commenced and continued until about half past ten o'clock, when the re-examination of the said witness commenced and continued about ten minutes, when the examination was closed. That the defendant, Samuel Purdy, died at about a quarter past eight o'clock the same evening, and that all persons present at said examination, including the said witness, were ignorant of such death and remained uninformed thereof until after the close of said examination.

" And I further report that it is admitted by the counsel, that by the death of said Samuel Purdy, the said Isaac O. Barker became interested in the subject matter of this suit, as husband of one of the heirs at law of the said Samuel Purdy.

" And I now respectfully report the above matters specially to the court, that I may be directed whether to allow the testimony of the said Isaac O. Barker, Esq., thus taken, to be evidence in the cause or not. Respectfully submitted, S. Cowdrey, Master in Chancery. Dated 11th February, 1839."

Mr. *C. O'Connor,* appeared for the complainants.

Mr. *W. Silliman,* for some of the defendants.

THE VICE-CHANCELLOR :—I think it was competent for the master, under the general authority of the 102d rule, to issue his summons, upon the request of the defendant's solicitor, for the examination of the witness on the part of the defendant. The rule provides that masters may, from time to time, as circumstances may require, fix the time within or at which any proceedings before him shall be had, &c.

On the first day of December, it became important to take the testimony of a witness on the part of the defendant. The reference was still open, and admitted of further examination of witnesses ; and, by issuing the summons, the master did but fix a time when he would proceed a step in the cause. In doing this, he infringed no right of the complainant's in regard to the conduct of the reference. The master did not thereby commit the reference to the defendant under the 101st rule. His summons only operated as a notice to the complainant of the examination of a witness before the master ; and I see no such irregularity in it as to justify the suppression of the deposition on that ground.

The next question is, as to the incompetency of the witness from interest ? He was not interested while his examination in chief was going on. It was not until after his direct examination closed, and while he was under a cross-examination, that his interest accrued by the death of his wife's father. Up to that moment of time he was not legally incompetent as a witness ; but when his direct examination was resumed, he had become incompetent, though the witness was ignorant of the fact which made him so. Under these circumstances the whole deposition cannot be rejected. The utmost that the complainant can have a right to object to is, that portion of the testimony which was given by the witness after he had been cross-examined, and when his direct examination was resumed. And this can only be upon strict technical rule of law. I think the line must here be drawn ; and all that had been done previous to and at the moment of Mr. Purdy's death should stand ; giving to the complainants at the same time, the benefit of the whole of the cross-examination.(*a*) This likewise meets and obviates

(*a*) See *Goss* v. *Tracy*, 1 P. Wm. 288 ; *Haws* v. *Hand*, 2 Atk. 615 ; *Glynn* v. *The Bank of England*, 2 Ves. Sen. 42.

1839.

FREAM
*v.*
DICKINSON.

*August* 26.

all difficulty arising from the abatement of the suit: see 1 Dick. 277.

Order, that so much of the deposition be suppressed, as was taken, on the part of the defendant, after the witness had been once cross-examined.